800 So.2d 757 (2001)
Jan Larson FRANDSEN, etc., et al, Appellant,
v.
COUNTY OF BREVARD, Florida, Appellee.
No. 5D00-3660.
District Court of Appeal of Florida, Fifth District.
December 14, 2001.
Lisa Kuhlman Tietig and Mark E. Tietig of Tietig & Tietig, P.A., Merritt Island, for Appellant.
Darryl L. Gavin of Rumberger, Kirk & Caldwell, P.A., Orlando, for Appellee.
THOMPSON, C.J.
Appellants appeal the dismissal of their complaint against Brevard County. The appellants sought a judgment declaring that Brevard County Ordinance 95-21[1] and sections 800.03[2] and 877.03[3], Florida *758 Statutes, violate the equal protection guarantee of Article I section 2 of the Florida Constitution to the extent that they prohibit exposure of the female breast in circumstances where the exposure of the male breast would not be prohibited.
The United States Supreme Court recently articulated the constitutional standard to be applied in deciding whether gender classifications violate the equal protection clause of the United States Constitution:
To summarize the Court's current directions for cases of official classification based on gender: Focusing on the differential treatment or denial of opportunity for which relief is sought, the reviewing court must determine whether the proffered justification is "exceedingly persuasive." The burden of justification is demanding and it rests entirely on the State. See Mississippi Univ. for Women [v. Hogan], 458 U.S. [718], at 724, 102 S.Ct. [3331], at 3336 [73 L.Ed.2d 1090]. The State must show "at least that the [challenged] classification serves `important governmental objectives and that the discriminatory means employed' are `substantially related to the achievement of those objectives.'" Ibid. (quoting Wengler v. Druggists Mut. Ins. Co., 446 U.S. 142, 150, 100 S.Ct. 1540, 1545, 64 L.Ed.2d 107 (1980)). The justification must be genuine, not hypothesized or invented post hoc in response to litigation. And it must not rely on overbroad generalizations about the different talents, capacities, or preferences of males and females. See Weinberger v. Wiesenfeld, 420 U.S. 636, 643, 648, 95 S.Ct. 1225, 1230-1231, 1233, 43 L.Ed.2d 514 (1975); Califano v. Goldfarb, 430 U.S. 199, 223-224, 97 S.Ct. 1021, 1035-1036, 51 L.Ed.2d 270 (1977) (STEVENS, J., concurring in judgment).
The heightened review standard our precedent establishes does not make sex a proscribed classification. Supposed "inherent differences" are no longer accepted as a ground for race or national origin classifications. See Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967). Physical differences between men and women, however, are enduring: "[T]he two sexes are not fungible; a community made up exclusively of one [sex] is different from a community composed of both." Ballard v. United States, 329 U.S. 187, 193, 67 S.Ct. 261, 264, 91 L.Ed. 181 (1946).
U.S. v. Virginia 518 U.S. 515, 532-33, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996) (alterations in Virginia) (footnotes omitted); see also, Mississippi Univ. for Women v. Hogan, 458 U.S. 718, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982).
The appellants claim that a standard more heightened than that enunciated above, "strict scrutiny," applies by virtue of the 1998 amendment to Article I section 2 of the Florida Constitution. The 1998 additions are underscored below:
All natural persons, female and male alike, are equal before the law and have inalienable rights, among which are the right to enjoy and defend life and liberty, to pursue happiness, to be rewarded for industry, and to acquire, possess and protect property; except that the ownership, inheritance, disposition and possession of real property by aliens ineligible for citizenship may be regulated or prohibited by law. No person shall be deprived of any right because of race, religion, national origin, or physical disability.

*759 The appellants' argument, that the addition of "female and male alike" requires strict scrutiny of laws that discriminate between women and men, is contradicted by the commentary of the Constitution Revision Commission. According to the commentary,[4] the initial proposal "would have added the term `sex' to the list of protected classes," but some members objected that such an amendment could lead Florida courts to conclude that it required recognition of same-sex marriages, as in Baehr v. Miike, 1996 WL 694235 (Haw.Cir. Ct.1996), order aff'd, 87 Hawai`i 34, 950 P.2d 1234 (1997). Accordingly, the commission promulgated a statement that the intent of the proposal, as adopted, "was to affirm explicitly that all natural persons, female and male alike, are equal before the law."
Contrasted to this stated intent to "affirm explicitly that all natural persons, female and male alike, are equal before the law," is the stated intent of adding the term "national origin" to the last sentence of the section. The commission stated that "the addition of national origin to the listing of protected classes will require strict scrutiny of classifications based upon the place of a person's birth, ancestry or ethnicity." Similarly, in 1974, when "physical handicap"[5] was added to the last sentence, the commentary stated that the addition would subject classifications based on physical handicap to strict scrutiny. Based on this different treatment of "sex" *760 on the one hand, and "national origin" and "physical disability" on the other, it must be concluded that classifications based on sex are not subject to strict scrutiny in Florida.
The scrutiny applied to the laws in issue, however, can be no less rigorous than that mandated by the United States Supreme Court, as quoted above. The question is whether the proffered justification is "exceedingly persuasive": the government must show that the classification serves important governmental objectives, and that the discriminatory means are substantially related to those objectives. Virginia, 518 U.S. at 533, 116 S.Ct. 2264. We align ourselves with the numerous courts which, in a variety of contexts, have held that laws similar to those challenged in the instant case do not violate the equal protection guarantee under the test set forth in Virginia. See e. g. Tolbert v. City of Memphis, 568 F.Supp. 1285 (W.D.Tenn. 1983); Dydyn v. Dep't of Liquor Control, 12 Conn.App. 455, 531 A.2d 170, 175 (1987); J & B Social Club No. 1, Inc., 966 F.Supp. 1131 (S.D. Alabama 1996); U.S. v. Biocic, 928 F.2d 112 (4th Cir.1991); Craft v. Hodel, 683 F.Supp. 289 (D.Mass.1988). Compare, Hoffman v. Carson, 250 So.2d 891 (Fla.1971); Moffett v. State, 340 So.2d 1155 (Fla.1976); McGuire v. State, 489 So.2d 729 (Fla.1986).
AFFIRMED.
COBB and PETERSON, JJ., concur.
NOTES
[1] The ordinance makes it a violation to appear nude in a public place or to appear nude so as to be in violation of section 877.03, Florida Statutes.
[2] Section 800.03 provides in part:

It is unlawful to expose or exhibit one's sexual organs in public or on the private premises of another, or so near thereto as to be seen from such private premises, in a vulgar or indecent manner, or to be naked in public except in any place provided or set apart for that purpose.
[3] Section 877.03 provides:

Whoever commits such acts as are of a nature to corrupt the public morals, or outrage the sense of public decency, or affect the peace and quiet of persons who may witness them, or engages in brawling or fighting, or engages in such conduct as to constitute a breach of the peace or disorderly conduct, shall be guilty of a misdemeanor of the second degree.
[4] Three changes were made to Article I, section 2 by 1998 Revision 9. The term "female and male alike," was added after and modifies the term "natural persons;" "national origin" was added to the listing of protected classes; and the term "physical handicap" was changed to "physical disability."

In adding the term "female and male alike," the Commission's intent was to secure equality for women in the Constitution. Florida had failed to pass the Equal Rights Amendment proposed for the United States Constitution, as well as the so-called "little equal rights proposal" offered by the 1977-78 Constitution Revision Commission.
As initially filed, the proposal would have added the term "sex" to the listing of protected classes. Questions arose as to whether that proposal could lead Florida courts to require recognition of same-sex marriages. An opinion of the Supreme Court of Hawaii, Baehr v. Lewin, 74 Haw. 530, 852 P.2d 44 (1993), had interpreted Hawaii's constitutional prohibition against discrimination "because of sex" to require strict scrutiny of Hawaii's marriage statute limiting marriages to heterosexual unions. On remand, the trial court struck the statute. Baehr v. Miike, 1996 WL 694235 (Hawai'i Cir.Ct.).
To address these concerns, the following statement of intent was placed into the Journal of the Constitution Revision Commission:
The intent of ... [this proposal], as adopted, was to affirm explicitly that all natural persons, female and male alike, are equal before the law. The proposal as adopted is not intended, and should not be construed, to confer any right to same-sex marriages in this state. Many in the body were concerned that the proposal as it was originally proposed, if adopted by the people, would have opened the door to same-sex marriages in Florida. That was not an acceptable result to many members of the Commission. Consequently, the purpose of amending the original proposal and adopting it in its amended form was to assure that the proposal would not be deemed in any way to countenance same-sex marriages.
The addition of "national origin" to the listing of protected classes will require strict scrutiny of classifications based upon the place of a person's birth, ancestry, or ethnicity. The amendment was not intended to protect illegal immigrants from federal immigration laws.
The change in terminology from "physical handicap" to "physical disability" was not intended to make a substantive change, but was simply a recognition that many disabled persons regard the term "handicap" as derogatory.
[5] The 1998 amendment changed the term "handicap" to "disability."